UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

PELEUS INSURANCE COMPANY,

            Plaintiff,

- against -

GARFIELD CONSTRUCTION LLC and NOONAN
PLAZA HOUSING LLC,

            Defendants.

---

Civil Action No. _____

**COMPLAINT**

Plaintiff PELEUS INSURANCE COMPANY ("Peleus"), by its attorneys TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP, for its Complaint for Declaratory Judgment against defendants, states as follows:

## NATURE OF ACTION, JURISDICTION AND PARTIES

1. This action is brought under Section 1332 of Title 28, United States Code, seeking this Court's determination concerning the respective rights and obligations of the parties under an insurance policy issued by Peleus Insurance Company ("Peleus") to defendants Garfield Construction LLC ("Garfield") and Noonan Plaza Housing ("Noonan"), including a declaration that Peleus has no obligation to defend or indemnify Garfield or Noonan in an underlying lawsuit.

2. Peleus us a Virginia insurance company (not an LLC), with a principal place of business in Richmond, Virginia.

3. Garfield is a New York limited liability corporation with its principal place of business in Brooklyn, New York.

4. None of the members of Garfield are residents of the Commonwealth of Virginia.

5. Noonan is a New York limited liability corporation with its principal place of business in Brooklyn, New York.

6. None of the members of Noonan are residents of the Commonwealth of Virginia.

7. The amount in controversy exceeds the sum or value of Seventy-Five Thousand ($75,000) Dollars exclusive of interest and costs.

8. This is an action between citizens of different states and diversity jurisdiction is proper pursuant to 28 U.S.C. §1332.

9. Venue is proper under 28 U.S.C. §1391 as one or more defendants reside in this judicial district or a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

10. This is a case or controversy involving a policy issued in this judicial district sufficient to permit a declaratory judgment under 28 U.S.C. §2201.

## BACKGROUND FACTS

**Underlying Action**

11. On or about March 9, 2020, Alex Bieton Irias commenced a suit against Garfield and Noonan, *inter alia*, in the Supreme Court of the State of New York, County of Bronx, entitled *Alex Bieton Irias v. HP Noonan Plaza Housing Development Fund Company, Inc., et al.*, Index No. 233477/2020 (the "Irias Action"). A copy of the complaint in the Irias Action is annexed hereto as Exhibit A.

12. In the Irias Action, plaintiff Irias seeks recovery for injuries he allegedly sustained on November 20, 2019 while working on the premises located at 105 West 168th Street, Bronx, New York (the "Premises") when he fell from a "height/scaffold" while he was working on the Premises. Ex. A at ¶¶72-74.

13. Plaintiff in the Irias Action alleges that he was an employee of Eduard Corp. at the time of the alleged incident.

14. Based on the nature of the claims asserted in the Irias Action and the nature of the alleged injuries, Peleus will incur defense costs in excess of $75,000 in defending Garfield and Noonan in that action.

15. On or about June 22, 2020, Raul Guevara commenced a suit against Garfield and Noonan, *inter alia*, in the Supreme Court of the State of New York, County of Bronx, entitled *Raul Guevara v. Noonan Plaza Housing LLC, et al.*, Index No. 26160/2020 (the "Guevara Action"). A copy of the complaint in the Guevara Action is annexed hereto as Exhibit B.

16. In the Guevara Action, plaintiff Raul Guevara seeks recovery for injuries he allegedly sustained on November 20, 2019 while working on the premises located at 105 West 168th Street, Bronx, New York (the "Premises") when he fell from a scaffold while he was working on the Premises as an employee of Eduard Corp. Ex. B at ¶¶87-90.

17. Based on the nature of the claims asserted in the Guevara Action and the nature of the alleged injuries, Peleus will incur defense costs in excess of $75,000 in defending Garfield and Noonan in that action.

18. In the Guevara Action, plaintiff alleges that the negligence of Garfield and Noonan caused his injuries.

19. Pursuant to an order dated October 25, 2021, the Irias and Guevara Actions were consolidated for all purposes, including a joint trial on liability and damages under Index Number 23347/2020E (referred to hereinafter as "the Underlying Action").

**The Peleus Policy**

20. Peleus issued Commercial General Liability policy 103 GL 0020861-00 to Garfield and Noonan (referred to collectively as "the insureds")for the policy period November 9, 2017 to

November 9, 2019 (the "Peleus Policy").  A copy of the Peleus policy is annexed hereto as Exhibit C.

21. The Peleus Policy was extended to August 9, 2020 by endorsement.

22. Peleus has advised Garfield and Noonan that the Peleus Policy does not provide indemnity coverage for the Underlying Action but is continuing to provide them with a defense in the Underlying Action under the Peleus Policy pending a determination of the parties rights and obligations under the Peleus Policy.

23. The Insuring Agreement to the Peleus Policy provides, in pertinent part, as follows:

> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> (1) The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and
>
> (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

Exhibit C.

24. The Peleus Policy contains the following endorsement:

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

**CONTRACTOR WARRANTY – SPLIT SCHEDULE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULES

| SCHEDULE A |
|---|
| **No Coverage Applies If Contractor Conditions Not Met** |
| **Description of Designated Operation(s):** |
| All work, activities, or operations involving land excavation, building foundation formation, load bearing beam installation, load bearing beam removal, structural steel installation, structural steel removal, elevator shaft work, or work, activities, or operations performed on the exterior of any building or structure. |
| **Specified Location(s):** |
| **Contractor's Commercial General Liability Limits of Insurance Requirements:** |
| Each occurrence Limit: $5,000,000 |
| General Aggregate Limit: $5,000,000 |
| Products/Completed Operations Aggregate Limit: $5,000,000 |

| SCHEDULE B |
|---|
| **No Coverage Applies If Contractor Conditions Not Met** |
| **Contractor's Commercial General Liability Limits of Insurance Requirements:** |
| Each Occurrence Limit" $1,000,000 |
| General Aggregate Limit: $2,000,000 |
| Products/Completed Operations Aggregate Limit: $2,000,000 |

A. **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended by the addition of the following:

1. **No Coverage Applies If Contractor Conditions Not Met** (SCHEDULE **A** above applies)

As a condition precedent to any rights the insured may have under this Policy, the insured must comply with all of the conditions enumerated below with respect to the designated operations described and locations specified in SCHEDULE A above. The insured agrees that we need not demonstrate any prejudice to us as a result of the insured's failure to comply with any of the below conditions in order to enforce those conditions precedent to coverage.

If prior to the commencement of any work, the insured fails to comply with the below conditions, any claim in which a "contractor" whose work directly or indirectly gives rise to the claim will not be payable under this Policy. We will have no obligation to either defend or indemnify the insured for any claims or legal actions brought against any insured.

The insured hereby warrants and agrees that any "contractor" has complied with all of the following conditions prior to the commencement of any work performed:

a. The "contractor" has signed and executed an agreement with the insured which contains the following provisions:

   (1) a hold harmless agreement indemnifying the insured, to the fullest extent permitted by law, against all losses arising out of the work performed by or on behalf of any such "contractor", including all expenses and legal fees incurred to defend claims alleging such losses; and

   (2) A requirement for the "contractor" to name the insured as an Additional Insured under their Commercial General Liability policy;

b. The "contractor" has maintained "adequate insurance";

c. The "contractor" has provided the insured with current Certificates of Insurance evidencing Commercial General Liability and Workers' Compensation and Employer's Liability coverage; and

d. All documents required must be kept on file and made available upon request.

2. **No Coverage Applies If Contractor Conditions Not Met** (SCHEDULE **B** above applies)

   As a condition precedent to any rights the insured may have under this Policy, the insured must comply with all of the

conditions enumerated below with respect to all operations and locations not described or specified in SCHEDULE A above. The insured agrees that we need not demonstrate any prejudice to us as a result of the insured's failure to comply with any of the below conditions in order to enforce those conditions precedent to coverage.

If prior to the commencement of any work, the insured fails to comply with the below conditions, any claim in which a "contractor" whose work directly or indirectly gives rise to the claim will not be payable under this Policy. We will have no obligation to either defend or indemnify the insured for any claims or legal actions brought against any insured.

The insured hereby warrants and agrees that any "contractor" has complied with all of the following conditions prior to the commencement of any work performed:

- **a.** The "contractor" has signed and executed an agreement with the insured which contains the following provisions:
  - **(1)** An hold harmless agreement indemnifying the insured, to the fullest extent permitted by law, against all losses arising out of the work performed by or on behalf of any such "contractor", including all expenses and legal fees incurred to defend claims alleging such losses; and
  - **(2)** A requirement for the "contractor" to name the insured as an additional insured under their Commercial General Liability policy.
- **b.** The "contractor" has maintained "adequate insurance";
- **c.** The "contractor" has provided the insured with current Certificates of Insurance evidencing Commercial General Liability and Workers' Compensation and Employer's Liability coverage; and
- **d.** All documents required must be kept on file and made available at our request.

B.  As used in this endorsement, **SECTION V - DEFINITIONS** is amended to include the following:

1. "Adequate insurance" means Commercial General Liability Insurance, Workers' Compensation and Employer's Liability Insurance written by an insurance carrier with an A.M. Best rating that is not less than A- VII and which:

    **a.** Remains in full force and effect from the date in which the contract for work being performed for the insured or on the insured's behalf is executed until the date on which the work

     is completed and the insurance is not canceled, discontinued nor does not expire during this period of time;

  **b.** Provides Commercial General Liability Limits of Insurance for such operations that are equal to or greater than the Limits of Insurance indicated in SCHEDULE **A** and **B** above;

  **c.** Provides Workers' Compensation and Employer's Liability Insurance in compliance with the statutes of the applicable state;

  **d.** Includes coverage for work being performed for the insured or on the "contractor's" behalf;

  **e.** Does not exclude any claim, "suit", loss, cost or expense arising out of any "bodily injury" to any "worker" of the "contractor" where the exclusion does not provide an exception for liability assumed by the insured under an "insured contract";

  **f.** Does not contain any conditions or provisions that preclude coverage based on requirements for hiring or contracting with subcontractors or independent contractors; and

  **g.** Does not exclude any claim, "suit", loss, cost or expense arising out of any "bodily injury" or "property damage" arising out of work being contracted to be performed by the "contractor".

2. "Contractor" means contractors, subcontractors, independent contractors or any other person or entity hired to perform work for the insured or on the insured's behalf.

3. "Worker" means any "employee", "temporary worker", "leased worker", "volunteer worker", apprentice, intern, casual laborer, borrowed employee, borrowed servant, independent contractor or subcontractor, or any person hired or retained by them, that performs work, whether directly or indirectly, for any "contractor".

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Exhibit C.

**<u>The Contracts</u>**

25. Noonan and Garfield entered into an agreement pursuant to which Garfield was to act as the general contractor for the construction work being performed at the Premises.

26.     Garfield entered into a contract with Abdul Construction & Painting Construction LLC ("Abdul") dated July 1, 2018 ("the Abdul contract"), and which was in effect on November 20, 2019, for work performed at the Premises. A copy of the Abdul contract is annexed hereto as Exhibit D.

27.     Paragraph 1 of the Subcontract Agreement Rider to the Abdul contract provides as follows:

> **Indemnity**. In consideration of the Contract Agreement, and to the fullest extent permitted by law, the Subcontractor shall defend and shall indemnify, and hold harmless, at Subcontractor's sole expense, the Contractor, all entities the Contractor is required indemnify and hold harmless, the Owner, and the officers, directors, agents, employees, successors and assigns of each of them from and against all liability or claimed liability for bodily injury or death to any person(s), and for any and all property damage or economic damage, including all attorney fees, disbursements and related costs, arising out of or resulting from the Work covered by this Contract Agreement to the extent such Work was performed by or contracted through the Subcontractor or by anyone for whose acts the Subcontractor may be held liable, excluding only liability created by the sole and exclusive negligence of the Indemnified Parties. This indemnity agreement shall survive the completion of the Work specified in the Contract Agreement.

Exhibit D.

28.     Paragraph 2 of the Subcontract Agreement Rider to the Abdul Contract provides as follows, in pertinent part:

> Insurance. The Subcontractor shall procure and shall maintain until final acceptance of the Work, such insurance as will protect the Contractor, all entities the Contractor is required indemnify and hold harmless, the Owner, and their officers, directors, agents and employees, for claims arising out of or resulting from Subcontractor's Work under this Contract Agreement, whether performed by the Subcontractor, or by anyone directly or indirectly employed by Subcontractor, or by anyone for whose acts Subcontractor may be liable. Such insurance shall be provided by an insurance carrier rated "A-" or better by A.M. Best and lawfully

> authorized to do business in the jurisdiction where the Work is being performed.
>
> 2.1. The Subcontractor's insurance shall include contractual liability coverage and additional insured coverage for the benefit of the Contractor, Owner and anyone else the Owner is required to name (as set forth in the schedule below), and shall specifically include coverage for completed operations. The insurance required to be carried by the Subcontractor and any Sub-Sub-Contractors shall be PRIMARY AND NONCONTRIBUTORY. With respect to each type of insurance specified hereunder, the Contractor's and Owner's insurances shall be excess to Subcontractor's insurance.

29. Pursuant to Paragraph 1.01 of the Abdul contract, Abdul was to preform "Façade Work" at the Premises. *Id*. at 11.

30. Garfield's work at the Premises included work, activities, or operations to be performed on the exterior of the building where the incident allegedly occurred.

31. Garfield and Abdul entered into a contract pursuant to which Abdul's work at the Premises included work, activities, or operations to be performed on the exterior of the building where the incident allegedly occurred.

32. Garfield and 4K Contracting, Inc. ("4K") entered into a contract pursuant to which 4K was to provide services that included work, activities, or operations performed on the exterior of the building where the incident allegedly occurred.

33. Garfield and Eduard entered into a contract pursuant to which Eduard performed work, activities, or operations on the exterior of the building where the incident allegedly occurred.

34. Eduard was responsible for the construction, maintenance and safe use and operation of the scaffolding in use at the time of the incident alleged in the Underlying Action

35. Abdul was responsible for the construction, maintenance and safe use and operation of the scaffolding in use at the time of the incident alleged in the Underlying Action.

36. 4K was responsible for the construction, maintenance and safe use and operation of the scaffolding in use at the time of the incident alleged in the Underlying Action.

37. The work performed by Eduard at the Premises involved included construction, maintenance and safe use and operation of the scaffolding in use at the time of the incident alleged in the Underlying Action.

38. Garfield does not have commercial general liability insurance with limits of liability equal to or greater than the limits of insurance required pursuant to Schedule A of the Contractor Conditions Warranty.

39. Abdul does not have any commercial general liability coverage with respect to the Premises or the injuries alleged in the Underlying Action.

40. Eduard does not have any commercial general liability coverage with respect to the Premises or the injuries alleged in the Underlying Action.

41. 4K has commercial general liability insurance in an amount less than $5,000,000 per occurrence and in the aggregate with respect to the Premises or the injuries alleged in the Underlying Action.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment – Garfield and Noonan)**

42. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "41" of the amended complaint as if fully set forth herein at length.

43. There is no coverage under the Peleus Policy if the requirements of the Contractor Warranty—Split Schedule endorsement to are not satisfied by the insured.

44. Pursuant to the Contractor Warranty—Split Schedule endorsement, no insured is entitled to a defense or indemnity under the Peleus Policy if the insured enters into an agreement

with a "contractor," as that term is defined in the Peleus Policy, and the "contractor" does not maintain "adequate insurance," as that term is defined in the Peleus Policy.

45. Garfield qualifies as a "contractor," as that terms is defined in the Peleus Policy.

46. Abdul qualified as a "contractor," as that term is defined in the Peleus Policy.

47. 4K qualified as a "contractor," as that term is defined in the Peleus Policy.

48. Eduard qualified as a "contractor," as that term is defined in the Peleus Policy.

49. Based on the work performed at the Premises, the insureds were required to comply with Schedule A of the Contractor Warranty – Split Schedule endorsement to the Peleus Policy

50. Garfield did not maintain "adequate insurance," as that term is defined in the Peleus Policy.

51. As a result of Abdul's lack of commercial general liability insurance with respect to the work being performed at the Premises, Abdul did not maintain "adequate insurance," as that term is defined in the Peleus Policy.

52. As a result of Eduard's lack of commercial general liability insurance with respect to the work being performed at the Premises, Eduard did not maintain "adequate insurance," as that term is defined in the Peleus Policy.

53. The commercial general liability insurance maintained by 4K with respect to the work being performed at the Premises did not constitute "adequate insurance," as that term is defined in the Peleus Policy.

54. The lack of "adequate insurance," as that term is defined in the Peleus Policy, as described above operates to preclude defense and indemnity coverage to the insureds with respect to the Underlying Action under the Peleus Policy

55.     Based on the foregoing, Peleus has no duty to defend Garfield, Noonan, or any other insured in the Underlying Action, and Peleus seeks a declaratory judgment to that effect.

56.     Based on the foregoing, Peleus has no duty to indemnify Garfield, Noonan, or any other insured, in the Underlying Action and Peleus seeks a declaratory judgment to that effect.

**WHEREFORE**, plaintiff demands judgment as follows:

a.  A declaration that Peleus does not owe Garfield or Noonan a duty to defend them in the Underlying Action;

b.  A declaration that Peleus does not owe Garfield or Noonan a duty to indemnify them with respect to the Underlying Action;

c.  Such other relief as the Court deems proper, together with reasonable attorney's fees, costs and disbursements in this action.

Dated: Hawthorne, New York
       August 29, 2022

**TRAUB LIEBERMAN STRAUS
 & SHREWSBERRY LLP**
*Attorneys for Plaintiff*

By: *Jonathan R. Harwood*

Jonathan R. Harwood
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
(914) 347-2600