UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PELEUS INSURANCE COMPANY,

                Plaintiff,

      v.

GARFIELD CONSTRUCTION, LLC and
NOONAN PLAZA HOUSING, LLC,

                Defendants.

1:22-CV-8099-LTS

---

MEMORANDUM ORDER

Plaintiff Peleus Insurance Company ("Plaintiff" or "Peleus") is an insurance company seeking a declaration that it has no obligation to defend or indemnify Defendants Garfield Construction, LLC ("Garfield") and Noonan Plaza Housing, LLC ("Noonan" and, together, "Defendants" or the "Insureds") in an underlying state court personal injury action. The Court has jurisdiction of this matter under 28 U.S.C. section 1332.

Pending before the Court is Plaintiff's motion for summary judgment. (Docket entry no. 33 ("Motion").) The Court has carefully reviewed the parties' submissions (docket entry nos. 36 ("Mem."), 45 ("Opp."), 47 ("Reply")) and, for the reasons discussed below, Plaintiff's Motion is granted.

## I.    BACKGROUND

The Court assumes the parties' familiarity with the general context and procedural history of this case.  The following facts are undisputed unless otherwise indicated.[1]

Noonan is the owner of a property located at 105-145 West 168th Street, Bronx, NY 10452 (the "Premises").  (Pl. 56.1 St. ¶¶ 8, 14; docket entry no. 34-9 ("Noonan-Garfield Contract") at 2.)[2]  On November 3, 2017, Noonan hired Garfield to act as the general contractor for a construction project on the Premises.  (See Noonan-Garfield Contract at 2; Pl. 56.1 St. ¶ 14-15.)  Garfield then hired Abdul Contracting & Painting Construction LLC ("Abdul") as a subcontractor to perform "façade work" for the project on the Premises.  (See docket entry no. 34-8 ("Abdul Contract").)  Abdul, in turn, hired Eduard Corp. ("Eduard") as a subcontractor to lay bricks on the façade.  (Pl. 56.1 St. ¶ 20.)

On November 20, 2019, Eduard employees Alex Bieton Irias ("Irias") and Raul Guevara ("Guevara") fell from a scaffold while working on the façade.  (Pl. 56.1 St. ¶¶ 20-21.)  They subsequently sued Noonan and Garfield in a New York Supreme Court case captioned Alex Bieton Irias v. HP Noonan Plaza Housing Development Fund Company, Inc., et al., Index No. 233477/2020, seeking recovery for the bodily injuries they sustained.  (Id. ¶¶ 5-6; Mem. at 5.)[3]

---

[1]    Facts characterized as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there has been no contrary, non-conclusory factual proffer.  Citations to the parties' respective Local Civil Rule 56.1 Statements (docket entry nos. 37 ("Pl. 56.1 St."), 44 ("Defs. 56.1 St.")) incorporate by reference the parties' citations to the underlying evidentiary submissions.

[2]    Pincites to materials filed on the docket refer to ECF-designated page numbers.

[3]    Irias and Guevara initially brought separate lawsuits, but their suits were consolidated for all purposes in 2021.  (Pl. 56.1 St. ¶ 7; Mem. at 5.)  This consolidated state lawsuit is hereinafter referred to as the "Irias Action."

Peleus issued a commercial general liability policy to both Defendants for an initial period of November 9, 2017 to November 9, 2019, which the parties eventually extended to May 9, 2020. (Pl. 56.1 St ¶ 1; docket entry no. 34-1 ("Peleus Policy") at 3.) The Peleus Policy was therefore in effect when Irias and Guevara sustained their injuries. The Peleus Policy provides that:

> [Peleus] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Peleus] will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Peleus Policy at 13.)

The Peleus Policy also contains an endorsement called the Contractor Warranty, which "modifies insurance provided under . . . the commercial general liability policy." (Id. at 72.) It specifies that, "[a]s a condition precedent to any rights the insured may have under this Policy, the insured must comply" with a series of specified conditions whenever the Insureds work with contractors who perform "work, activities, or operations performed on the exterior of any building or structure." (Id.) As relevant here, the Contractor Warranty provides:

> If prior to the commencement of any work, the insured fails to comply with the below conditions, any claim in which a "contractor" whose work directly or indirectly gives rise to the claim will not be payable under this Policy. We will have no obligation to either defend or indemnify the insured for any claims or legal actions brought against any insured.
>
> The insured hereby warrants and agrees that any "contractor" has complied with all of the following conditions prior to the commencement of any work performed: . . . The "contractor" has maintained "adequate insurance";

(Id. at 72-73.)

The Contractor Warranty defines "contractor" to mean "contractors, subcontractors, independent contractors or any other person or entity hired to perform work for the insured or on the insured's behalf." (Id. at 74.) It also lays out several requirements for "adequate insurance." "[A]dequate insurance" means "Commercial General Liability Insurance, Workers' Compensation, and Employer's Liability Insurance" which, inter alia, (1) "provides Commercial General Liability Limits of Insurance for such operations that are equal to or greater than" $5,000,000 for each occurrence and a general aggregate limit of $5,000,000 and (2) "does not exclude any claim, 'suit', loss, cost or expense arising out of any 'bodily injury' to any 'worker' of the 'contractor' where the exclusion does not provide an exception for liability assumed by the insured under an 'insured contract.'"[4] (Id. at 72, 74.)

Peleus initially defended Noonan and Garfield in the Irias Action. (Pl. 56.1 St. ¶ 25.) Over the course of discovery in that Action, however, Peleus came to believe that Abdul did not maintain adequate insurance as defined in the Peleus Policy. (Id. ¶¶ 25-26.) The Abdul Contract only required Abdul to obtain commercial general liability insurance in the amount of $1,000,000 per occurrence and $2,000,000 in the aggregate (id. ¶ 18), and Abdul's insurance coverage excluded bodily injuries suffered by Abdul's subcontractors or their employees (see docket entry no. 35-4 ("Colony Coverage Ltr.")). On March 1, 2021, Abdul's insurance company informed Abdul that it had no coverage for the Irias Action because Irias was an employee of one of Abdul's subcontractors. (Id.)

Once Peleus became aware of the details of Abdul's insurance policy, it sent Noonan and Garfield a letter informing them that they were no longer entitled to defense or

---

[4]    The Contractor Warranty further defines "worker" to include any "subcontractor, or person hired or retained by them . . . ." (Peleus Agreement at 74.)

indemnity coverage in the Irias Action.  (Pl. 56.1 St. ¶ 25.)  However, Peleus advised Defendants that it would continue to defend them until its coverage position was confirmed by a court, and the instant case ensued.  (Id.)

## II.    DISCUSSION

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-26 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 477 U.S. at 248).  The moving party bears the burden of demonstrating the absence of a material fact, and the court must be able to find that, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party."  Marvel Entm't, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)).  However, where the party opposing summary judgment "fails to properly address [the moving] party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).  A nonmovant thus "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998), and instead must support the existence of a dispute with specific citations to record materials, Fed. R. Civ. P. 56(c).

Here, the parties both assume that New York law applies to this dispute, which is a "sufficient [basis] for New York law to control the dispute."  Peleus Ins. Co. v. Atl. State Dev.

Corp., 587 F. Supp. 3d 7, 15 (S.D.N.Y. 2022).  "Under New York law, the initial interpretation of a contract is a matter of law for the court to decide."  Id. (quoting K. Bell & Assocs., Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996)).  "As with the interpretation of any contract, the unambiguous terms of an insurance policy must be accorded their plain and ordinary meaning."  Mt. Hawley Ins. Co. v. Nat'l Builders LLC, No. 08-CV-5526-WHP, 2009 WL 1919611, at *2 (S.D.N.Y. June 30, 2009) (quoting Seaport Park Condominium v. Greater N.Y. Mut. Ins. Co., 828 N.Y.S.2d 381, 383 (N.Y. App. Div., 1st Dep't 2007)).

Here, based on the unambiguous language of the Peleus Policy and uncontradicted record evidence, there can be no dispute that Defendants failed to comply with the conditions precedent in the Contractor Warranty.  The Contractor Warranty provides that, as a "condition precedent to any rights the insured may have under this Policy," the Insureds had to comply with all of the Policy's enumerated conditions, and their failure to do so precluded coverage.  (Peleus Policy at 72.)  One of those conditions was that the Insureds were obligated to ensure that their contractors—including subcontractors and any other "person or entity hired to perform work for the insured or on the insured's behalf"—maintained "adequate insurance."  (Id. at 73-74.)

Abdul qualified as a contractor under the Peleus Policy because it was hired by Garfield and performed work on Noonan's behalf.  As Defendants admit, Garfield and Abdul entered into a contractual "agreement between contractor and sub-contractor" that retained Abdul to perform "façade work" for the construction project on Noonan's Premises.  (Abdul Contract at 2, 3; see also Defs. 56.1 St. ¶ 17.)  Because Abdul was a contractor working on the exterior of a building, Defendants "warrant[ed] and agree[d]" that Abdul had complied with the

Contractor Warranty's requirement to maintain specific forms of "adequate insurance." (Peleus Policy at 72-73.)

The uncontradicted record here establishes that Defendants failed to ensure that Abdul maintained "adequate insurance" as defined in the Contractor Warranty. Because Abdul was hired to work on the exterior of a building, Defendants were obligated to ensure that Abdul acquired a commercial general liability insurance in the amount of at least $5,000,000 per occurrence and $5,000,000 in the aggregate. (Id.) As Defendants admit, however, the contract between Garfield and Abdul only required Abdul to obtain commercial general liability insurance in the amount of $1,000,000 per occurrence and $2,000,000 in the aggregate. (Pl. 56.1 St. ¶ 18; Defs. 56.1 St. ¶ 18.) Defendants also were obligated to ensure that Abdul's insurance did not exclude claims or suits arising out of bodily injury to Abdul's own workers, which included its subcontractors and their employees. (Peleus Policy at 74.) Abdul's general liability insurance policy, however, expressly excluded coverage for bodily injuries suffered by its subcontractors or their employees, which here included Abdul's subcontractor Eduard and its employees Irias and Guevara. (See generally Colony Coverage Ltr.)

By failing to ensure that Abdul maintained "adequate insurance," Defendants failed to fulfill an express condition precedent to their own coverage under the Peleus Policy for the Irias Action. "Express conditions must be literally complied with before a party to the contract may recover." Mt. Hawley Ins. Co. v. Van Cortland Vill. LLC, No. 08-CV-10414-CM, 2011 WL 5834255, at *8 (S.D.N.Y. Nov. 18, 2011). Here, the Contractor Warranty expressly states, "If prior to the commencement of any work, the insured fails to comply with the [adequate insurance] condition[], any claim in which a 'contractor' whose work directly or indirectly gives rise to the claim will not be payable under this Policy. [Peleus] will have no obligation to either

defend or indemnify the insured for any claims or legal actions brought against any insured." (Peleus Policy at 73.)  Because Defendants failed to comply with the plain language of the Peleus Policy, Defendants cannot claim Peleus's coverage for Irias and Guevara's injuries, and Peleus has no obligation to defend or indemnify Defendants in the Irias Action.

Defendants raise three arguments in opposition to summary judgment; none has merit.

First, Defendants claim that the Peleus Policy is "ambiguous as to its applicability in the instant action." (Opp. at 6.)  Beyond this statement, however, Defendants provide no argument nor even a single record citation identifying supposedly ambiguous language in the Peleus Policy.  Rather, Defendants implore the Court to "review the policy in its entirety, and make a determination as to whether the exclusion relied upon by the Plaintiff is clear and unambiguous."  (Id.)  As a threshold matter, Defendants cannot properly defeat a summary judgment motion by presenting a conclusory, unsubstantiated allegation and then offloading their evidentiary and argumentative burden onto the Court.  Scotto, 143 F.3d at 114.  The Court has, nonetheless, reviewed the Policy.  "[A] provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." Hartford Fire Ins. Co. v. Mitlof, 208 F. Supp. 2d 407, 412 (S.D.N.Y. 2002) (quotation omitted).  Here, the Court finds no relevant provision in the Peleus Policy or the Contractor Warranty that is reasonably susceptible to multiple readings.

Second, Defendants argue that they did, in fact, fulfill their obligation to ensure that Abdul obtained "adequate insurance." (Opp. at 7.)  Defendants do not, however, support this argument (nor any others in their brief) with a single citation to the evidentiary record. Defendants cannot establish a genuine factual dispute as to the adequacy of Abdul's insurance with nothing more than their own say-so.  That is particularly so because Defendants admit in

their Rule 56.1 Statement that they failed to ensure that Abdul obtained "adequate insurance." (Compare Defs. 56.1 St. ¶ 18 (admitting that that the Abdul Contract required Abdul to obtain only commercial general liability insurance in the amount of $1,000,000 per occurrence and $2,000,000 in the aggregate), with Peleus Policy at 72 (requiring contractors to obtain commercial general liability insurance in the amount of $5,000,000 per occurrence and in the aggregate).)

Third, Defendants argue that the policy is illusory because it allows the carrier "an easy out in the event the policy is called upon to defend and/or indemnify the policyholder." (Opp. at 7.)  Defendants neither supply nor analogize to any case law that finds an insurance policy illusory, which places their argument on weak footing from the start.  New York courts have explained that "[a]n insurance policy is not illusory if it provides coverage for some acts; it is not illusory simply because of a potentially wide exclusion." Lend Lease (U.S.) Const. LMB Inc. v. Zurich Am. Ins. Co., 136 A.D.3d 52, 60 (N.Y. App. Div., 1st Dep't 2015) (citation omitted), aff'd., 71 N.E.3d 556 (2017).  Defendants have not shown that the Contractor Warranty is so expansive that it effectively negates Defendants' coverage under the Peleus Policy; Defendants thus have failed to establish a genuine material factual dispute as to whether the policy coverage is illusory.[5]  To the contrary, a host of courts in this District have upheld nearly identical contractual provisions and found them not illusory.  See, e.g., Van Cortland Vill. LLC, 2011 WL 5834255, at *10-11 (collecting cases); Peleus Ins. Co., 587 F. Supp. 3d at 17. Defendants' third argument fails.

---

[5]    Indeed, the Contractor Warranty modifies coverage only for Defendants' contractors, not for the Insureds' own employees, so it clearly is not so broad as to effectively negate coverage altogether.  (See Peleus Policy at 13.)

In sum, the undisputed facts here establish that (1) Abdul was Defendants' contractor working on the exterior of a building, and Defendants therefore had an obligation to ensure Abdul maintained "adequate insurance"; and (2) Defendants failed to fulfill that obligation.  Defendants thus failed to satisfy a condition precedent to Peleus's obligation to provide coverage, and Peleus has no obligation to defend and indemnify Defendants in the Irias Action.  Plaintiff is entitled to a summary judgment as a matter of law, and its motion is granted.

III.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted. The Court hereby declares that Peleus is not liable for coverage of, or obligated to defend litigation regarding, the injuries arising out of Irias and Guevara's work for Defendants.  Peleus has no obligation to defend or indemnify Defendants in the Irias Action and may terminate and withdraw from the defense of Defendants in that Action.  The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.  Any application for attorneys' fees shall be made by motion in accordance with Federal Rule of Civil Procedure 54(d)(2).  This Memorandum Order resolves docket entry no. 33.

SO ORDERED.

Dated: New York, New York
March 31, 2026

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge